IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Respondent/Plaintiff,

v.                                                               CV 07-0209 RB/WPL
                                                               CR 05-0222 RB

MARY LOU JACQUEZ CAMPOS,

    Movant/Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

After pleading guilty to possession with intent to distribute five grams and more of a substance containing a detectable amount of cocaine base, Mary Lou Jacquez Campos was sentenced to 120 months of imprisonment. (Doc. 182.)[1] She has filed a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 209) and a motion for return of property under Federal Rule of Criminal Procedure 41(g) (Doc. 207, 212).[2] For the reasons that follow, I recommend that both motions be denied.

**THE 41(g) MOTION**

Campos seeks the return of all personal property that was seized pursuant to a search warrant, as well as certified copies of the search warrant and related documents. Although her motion for return of property does not describe the property she seeks, it is apparent from her § 2255 motion that she is primarily interested in the return of approximately $20,000 in cash that was seized from her residence. (*See* Doc. 209 (Memo. of Authority) at 3.) Campos claims that the money came

---

[1] All document number references are to CR 05-0222 RB.

[2] Although Campos only filed one motion for return of property, the motion was docketed twice in CR 05-0222 RB. It was also docketed as Document 7 in CV 07-0209 RB/WPL.

from a "mortgage/loan" on her home and was not derived from any illegal activities. (*Id.*)

The United States asserts that a forfeiture action regarding the money is pending. (Doc. 214 at 12.) Campos has not disputed this assertion. She states that "the Government agent performing the search" told her that the money would be used as evidence against her and "would be part of [a] forfeiture of property found at her residence." (Doc. 209 (Memo. of Authority) at 3.)

A court may take judicial notice of facts that are a matter of public record, including the docket of a related state court case. *Binford v. United States*, 436 F.3d 1252, 1256 n.7 (10th Cir. 2006); *Stack v. McCotter*, 79 F. App'x 383, 391-92 (10th Cir. 2003). An online search using the New Mexico State Judiciary Case Lookup system reveals that the Pecos Valley Drug Task Force filed a forfeiture action against Mary Lou J. Campos in January 2005. The docket sheet for that case reflects that Campos was served with a summons on April 25, 2005 and that Gary Mitchell—the same attorney who represented her in her federal criminal trial—has appeared on her behalf. A docket notation on December 5, 2005 indicates that the case settled; however, no final judgment has been entered. The last activity in the case was a status conference on October 10, 2006.

Federal Rule of Criminal Procedure 41(g) allows a person who is aggrieved by an unlawful search and seizure of property to move for the property's return. A Rule 41(g) motion is governed by equitable principles and should be granted only if the movant demonstrates both irreparable harm and an inadequate remedy at law. *United States v. Copeman*, 458 F.3d 1070, 1071 (10th Cir. 2006). Here, Campos has an adequate remedy at law because she can seek return of her property in the state forfeiture case. *See id.* at 1073. Her motion for return of property should accordingly be denied.

## THE 2255 MOTION

Campos claims that her attorney provided ineffective assistance of counsel. To prevail on this claim, she must satisfy a two-part test. First, she must show that counsel's performance fell

below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, Campos must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, she must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)), *cert. denied*, 126 S. Ct. 2318 (2006).

According to Campos, her counsel told her that she would be sentenced to 3½ years and would be released after only 2½ years with good behavior. Assuming that counsel made this statement, Campos has not established a reasonable probability that she would have insisted upon going to trial but for this alleged misrepresentation regarding her sentence.[3]

Campos pled guilty pursuant to a written plea agreement with the United States. (Doc. 132.) The agreement, which was signed by Campos and Mitchell, states that the sentencing range was "not less than five (5) years nor more than forty (40) years" and that "[t]he parties agree that the defendant shall receive ten (10) years incarceration" pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (*Id.* at 2-3.) The agreement further states that Campos "represents that this plea of guilty is . . . not the result of . . . promises apart from those set forth in this plea agreement" and that

---

[3] Mitchell has submitted an affidavit denying that he misrepresented the sentence or made any of the other statements that Campos alleges he made. (Doc. 214.)

"[t]here have been no representations or promises from anyone as to what sentence the Court will impose." (*Id.* at 4.) These statements belie Campos's suggestion that she pled guilty based on the misrepresentation that she would serve no more than 2½ years. *See United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993); *see also Silva*, 430 F.3d at 1099-1100. I also note that at the sentencing hearing, Campos's attorney argued for a ten-year sentence, stating, "Your Honor, we have agreed to a set number of years in this particular matter, 10 years." (Tr. at 2.) Although given an opportunity by the Court to comment before the sentence was imposed, Campos did not indicate that she pled guilty believing that she would serve only 2½ years.

Campos faults her attorney for not filing a motion in limine to exclude evidence regarding the money seized from her home on the ground that the money constituted legal proceeds of the "mortgage/loan." Campos's prosecution apparently resulted from the search of her home, during which the money—and crack cocaine—were found. (*See* Doc. 164.) The Government's exhibit list in the trial of one of her co-defendants included photographs of a suitcase on a bed with packages wrapped in aluminum foil, an opened foil package containing money, and foil packages labeled with numbers, such as "1,300" and "1,200." (Doc. 158.)

"[T]he Sixth Amendment does not require that every possible motion be filed, but only those having a solid foundation." *Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986); *see also United States v. Dixon*, 1 F.3d 1080, 1083 n.5 (10th Cir. 1993) ("Failure to raise an issue that is determined not to have merit does not constitute constitutionally ineffective assistance of counsel."), *abrogated on other grounds by Florida v. White*, 526 U.S. 559 (1999). Assuming that counsel could have established that Campos received funds from a loan, there is still no reason to believe that the Court would have excluded the money found at her home as evidence, considering the way in which the Government alleged the money was arranged.

Moreover, Campos has not shown, or even alleged, that she would not have pled guilty if the motion in limine to exclude the money had been filed or granted.  She offers no basis for excluding the cocaine found at her residence.  At the sentencing hearing, the Court observed that the evidence against Campos was overwhelming and that it took less than an hour for a jury to convict her co-defendant.  (Tr. at 8-9.)

Campos also argues that she could have received a lighter sentence but for her attorney's deficiencies.  Before turning to her specific arguments in this regard, it is useful to compare the sentence that Mitchell negotiated for Campos with the sentence she could have received if she went to trial.

At the sentencing hearing, the Court advised Campos, "[W]ith your criminal history, while this is a terribly difficult sentence . . . with your criminal history, you could have been facing nearly twice this amount of time." (*Id.* at 5-6.)  The Court stated that Campos was a career offender under the Sentencing Guidelines, with a criminal history category of VI and an offense level of 31, resulting in an imprisonment range of 188-to-235 months.  (*Id.* at 13.)  Having presided over the trial of one of Campos's co-defendants, the Court was well aware of the facts of the case.  With that awareness, the Court advised Campos that she would likely "be facing 235 months." (*Id.* at 6.)  At another point the Court remarked, "And Mr. Mitchell has done a good job in this case, I think, in terms of the sentence that's been worked out.  Because of your extensive criminal history, you were facing such a long time." (*Id.* at 10.)[4]

Campos points out that she received a longer sentence than her two co-defendants, even

---

[4] The Court apparently took the sentencing range from the PSR, which included a reduction for acceptance of responsibility.  The Government asserts that without this reduction, the sentencing range would have been 262-to-327 months if Campos had gone to trial.

5

though she claims that she gave full and substantial assistance to the government. The mere fact that her co-defendants received lesser sentences does not demonstrate that her counsel was ineffective. Sentencing decisions are based on many factors, including a defendant's criminal history. As noted by the Court, Campos had an extensive criminal history. (*See* Doc. 118.)

Campos contends that counsel did not go over the presentence report (PSR) with her, nor did he attempt to correct the report. Campos only identifies one purported error in the report—it characterized the money found at her house as drug proceeds.

The Court commenced the sentencing hearing by asking attorney Mitchell whether he had gone over the PSR with Campos and whether any corrections to the report were necessary. (Tr. at 2.) Mitchell responded that there were no corrections and that he had "gone over the entire report with Mary, and we've discussed the entire report, including – because of the extensive number of priors and such, gone over those as well." (*Id.*) Because counsel is an officer of the court, this statement was "'virtually made under oath.'" *United States v. Deberry*, 430 F.3d 1294, 1300 (10th Cir. 2005) (quoting *Holloway v. Arkansas*, 435 U.S. 475, 486 (1978)), *cert. denied*, 127 S. Ct. 113 (2006). Campos did not contest the statement during the hearing.

More importantly, because Campos pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement, she cannot show that she received a longer sentence because of any failure by counsel related to the PSR. If a court accepts such a plea agreement, the court must impose the sentence stipulated to in the agreement. *See* FED. R. CRIM. P. 11(c)(1)(C); *United States v. Graham*, 466 F.3d 1234, 1239 (10th Cir. 2006). Thus, the Court did not use the PSR to calculate Campos's sentence. *See Graham*, 466 F.3d at 1239-41; *see also United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005) ("A sentence imposed under a Rule 11(c)(1)(C) plea arises directly from the agreement itself, not from the Guidelines, even though the court can and should consult the Guidelines in deciding

6

whether to accept the plea.").

Campos also believes that counsel should have gotten her a lighter sentence based on her medical problems and other mitigating circumstances. At the time of sentencing, she was sixty-seven years old and had cardiac problems, borderline diabetes, hypertension, a painful digestive disorder, and a painful lump in her lower back, which she later learned was cancerous. Counsel was apparently aware of these conditions because he noted both her age and her "physical problems" in arguing for the ten-year sentence. (Tr. at 2-3.) There is nothing more than speculation to support the idea that he could have negotiated a more favorable sentence on the basis of Campos's medical problems. There is also no support for Campos's contention that she would have received a lighter sentence if counsel had informed the Court of the full extent of her medical problems, by, for example, requesting a medical evaluation. As noted above, the Court was required to impose the sentence set out in the plea agreement.

Campos claims that her attorney made the following statement to her at the conclusion of the sentencing hearing: "I am sorry that I was unable to provide you with better representation. But I've had family members die on me and a lot of personal problems." (Doc. 1 at 5.) Assuming that Mitchell made this statement, it is irrelevant. The test for ineffective assistance of counsel is objective; it does not hinge on the attorney's subjective opinion regarding the quality of his representation. *See Strickland*, 466 U.S. at 687-88. Considering the overwhelming evidence of guilt and the sentencing range that Campos faced if she were tried and convicted, it was not objectively unreasonable for counsel to advise her to plead guilty and accept the ten-year sentence.

Campos asserts that counsel failed to investigate, interview her, explain any type of strategy, or advise her of the consequences of pleading guilty. She fails to identify any consequences of which she was unaware, nor does she describe how she was prejudiced by the alleged failure to

7

investigate or interview her.  Thus, these complaints are too conclusory to provide a basis for relief. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).  I also note that the plea agreement detailed the rights that Campos was waiving by pleading guilty.  (Doc. 132 at 1-2, 4.)

Finally, Campos complains about the money she paid Mitchell and about his alleged deficiencies in representing her in the forfeiture case.  She additionally contends that his failure to request a medical evaluation caused her treatment to be delayed.  The purpose of a § 2255 motion is to attack the legality of a prisoner's detention.  *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).  Because these complaints do not attack the legality of her detention, they are not cognizable in this proceeding.

## RECOMMENDATION

For the reasons stated above, I recommend that the § 2255 motion and the motion for return of property be denied and that CV 07-0209 RB/WPL be dismissed with prejudice.

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE